**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COOKEVILLE DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **NO. 2:00-cr-00002-1** |
| | ) | **Judge Aleta A. Trauger** |
| | ) | |
| **R.V. YOUNG** | ) | |

<u>**MEMORANDUM**</u>

Before the court is the defendant R.V. Young's Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A)(i), seeking reduction of the sentence imposed by this court in 2000 based on the existence of "extraordinary and compelling circumstances." (Doc. No. 88, at 1.) The government has responded in opposition to the motion (Doc. No. 94), and the defendant has submitted a reply (Doc. No. 95) and Supplemental Citation (Doc. No. 96). For the reasons that follow, the defendant's motion for a sentence reduction will be granted and a hearing will be scheduled for the purpose of determining the appropriate sentence in light of the factors set forth in 18 U.S.C. § 3553(a).

**I.        FACTUAL AND PROCEDURAL BACKGROUND**

As explained in the Presentence Investigation Report ("PSR"), R.V. Young was born in 1947 and grew up in rural Tennessee. He enlisted in the U.S. Army in 1968 and served in combat in Vietnam. He was honorably discharged as a sergeant. (PSR ¶¶ 90, 98, 100–01.) After his return home, he married, raised a son, worked hard and lived a law-abiding life for thirty years. (*Id.* ¶¶ 92, 102–06.) In 1997, he turned 50 years old and, for the first time in his life (not counting marijuana while serving in Vietnam), began using drugs. He quickly developed a daily crack cocaine habit. (*Id.* ¶ 99.) Although he continued working steadily, he began robbing banks at

gunpoint to pay for his addiction. (*Id.* ¶¶ 13–19.) On September 16, 1998, he was arrested, prosecuted, and convicted in state court of robbing a check-cashing business. (*Id.* ¶ 86.) He was subsequently identified as the likely perpetrator of five previous bank robberies that had taken place from December 1997 to March 1998, which led to the charges and ultimate convictions in this federal case. (*Id.* ¶¶ 13–19.)

Young was indicted in February 2000 in a ten-count indictment: five counts of armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d) (Counts 1, 3, 5, 7, and 9), and five counts of using a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c) (Counts 2, 4, 6, 8, and 10). (Doc. No. 1; *see also* Judgment, Doc. No. 48.)[1] The case proceeded to trial in July 2000; the jury found Young guilty on all counts charged in the Indictment. (Doc. No. 37.) The court sentenced Young on November 7, 2000 to 87 months on each bank robbery conviction, to run concurrently with each other and concurrently with the state sentence he was already serving. As then required by the Supreme Court's interpretation of § 924(c), the court imposed a five-year sentence on Count 2, to run consecutively to the 87-month sentence, and twenty years on each of the other four § 924(c) convictions, all to run consecutively to any other prison term, for a total sentence of 1,107 months (92.25 years), to be followed by three years of supervised release. (Doc. No. 48, at 2, 3.) The Sixth Circuit affirmed. *United States v. Young*, 40 F. App'x 925 (6th Cir. 2002).

This court noted during sentencing that the defendant's criminal history category was a II and the offense level was 28, which rendered a guideline range of 87 to 108 months. Young was sentenced at the bottom of the guideline range on all of the bank robbery counts. The court stated

---

[1] Except for the Judgment (Doc. No. 48) and an excerpt of the transcript of the sentencing hearing (Doc. No. 47), documents filed in this case prior to July 2005 are not available on-line through CM/ECF.

on the record that the reason for the sentence on the § 924(c) counts was that the court had no choice, that it was clear that the defendant's crack addiction provided the only explanation for his engagement in criminal behavior, and that the disproportionate sentence was "a tragedy." (Doc. No. 47, at 4.) The court retains a clear recollection of the sentencing and its strong belief at the time that the mandatory sentences on the § 924(c) convictions were unfair and utterly disproportionate to the crimes.

The defendant, through counsel, filed his Motion for Sentence Reduction on September 16, 2019. In it, the defendant argues that, due to § 603 of the First Step Act, P.L. 115-391, 132 Stat. 5194 (Dec. 21, 2018), the process for granting compassionate release under 18 U.S.C. § 3582(c)(1)(A) has been transformed, in that a court can now resentence under that provision "upon motion by the defendant," assuming the defendant has exhausted his administrative remedies, without waiting for a motion to be filed by the Director of the Federal Bureau of Prisons ("BOP"), as was previously required. There is no dispute that the defendant has exhausted administrative remedies in this case.

The defendant argues that the court should grant compassionate release, and resentence him to time served plus three years of supervised release, on the basis that: (1) Congress has "clarified" the judicially created rule requiring the "stacking" of sentences on § 924(c) convictions such that, under the current law, Young would be subject to a much shorter mandatory sentence of 25 years, rather than 85, on those convictions (Doc. No. 88, at 1); (2) Young received his lengthy sentence as a result of exercising his right to proceed to trial, despite the government's offer of a plea deal that would have entailed a sentence of 20 years; (3) Young is now 72 years old and suffers from numerous chronic physical ailments, including diabetes, hyperlipidemia, hypertension, and cataracts, among others, that collectively make "surviving in prison harder and

harder" and strain prison resources (*id.* at 2, 4); (4) Young's crimes resulted from an "aberrational mid-life crisis" and sudden cocaine crack addiction at age 50, despite having honorably served his country in Vietnam in his youth and having been an upstanding, hard-working citizen up until that time (*id.*), and his prison record reflects that he has been a "model inmate" who has worked hard, going "above and beyond what is asked of him" (Doc. No. 88-1, at 1, 3).

In its Response, the government acknowledges that passage of the First Step Act enabled a defendant to file a motion for compassionate release directly with the district court, assuming exhaustion of administrative remedies, and that a court may reduce a sentence if the defendant establishes that "extraordinary and compelling circumstances" warrant reduction and that a reduction would be consistent with applicable Sentencing Commission policy. (Doc. No. 94.) The government also concedes that, because the Sentencing Commission's policy statement "has not been amended to reflect that, under the First Step Act, a defendant may now move for compassionate release after exhausting administrative remedies," the existing policy statement, while providing "helpful guidance," "is not ultimately conclusive given the statutory change." (Doc. No. 94, at 4–5 (quoting *United States v. Fox*, No. 2:14-cr-03-DBH, 2019 WL 3046086, *3 (D. Me. July 11, 2019)).)

Regarding the merits of the defendant's motion, however, the government argues only that the defendant has not presented "compelling and extraordinary reasons" for compassionate release, because his medical conditions do not meet any of the criteria identified in the commentary to U.S.S.G. § 1B1.13, that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason," 28 U.S.C. § 994(t), and, therefore, that a reduction in this case "would not be consistent with applicable policy statements issued by the Sentencing Commission." (Doc. No. 94, at 6–7.)

In his Reply, the defendant points out that his motion is not premised upon an argument that his medical condition meets the criteria set forth in subdivision (A) of the commentary to U.S.S.G. § 1B1.13, rendering the government's Response largely beside the point. Instead, his argument is based, first, on the proposition that the court is not constrained by the Sentencing Commission's commentary to § 1B1.13—as the government effectively concedes. Second, he argues that he nonetheless meets, or comes close to meeting, subdivision (B) of the commentary and that, under subdivision (D), his age, physical condition, and clear rehabilitation, in conjunction with Congress's clarification of the sentence-stacking provision in § 924(c), together constitute extraordinary and compelling circumstances that warrant reduction in his case. The government did not respond to these arguments. Finally, while acknowledging that no circuit court of appeals has addressed the question, Young brings to the court's attention several district court cases that have embraced his theory, as discussed below.

In a Supplemental Citation (Doc. No. 96), citing *United States v. Maumau*, No. 2:08-cr-758-TC-11, 2020 WL 806121 (D. Utah Feb. 18, 2020), Young requests that this court similarly find that he is entitled to relief under 18 U.S.C. § 3582(c)(1)(A) and set the case for a hearing under 18 U.S.C. § 3553(a).

## II.     STATUTORY AND REGULATORY STANDARDS

Congress first enacted the compassionate release provision contained in 18 U.S.C. § 3582 as part of the Comprehensive Crime Control Act of 1984. As originally enacted, Section 3582(c) permitted a district court, "upon motion of the Director of the Bureau of Prisons," to "reduce a term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable," if, as relevant here, the court found that "extraordinary and compelling reasons warrant such a reduction and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A) (1984). Absent a

motion by the Director of the BOP, sentencing courts had no authority to modify a prisoner's sentence for extraordinary and compelling reasons.

Congress never defined what constituted "extraordinary and compelling reasons" for a § 3582(c) reduction, but the legislative history of the Comprehensive Crime Control Act of 1983 provides some clues as to how Congress believed the statute should be employed by the federal courts. In particular, one of the initial goals of the Act was to abolish federal parole and create a "completely restructured guidelines sentencing system." S. Rep No. 98-225, at 53 n.196, 1983 WL 25404 (1983). Nonetheless, recognizing the role that parole had historically played in responding to a prisoner's changed circumstances, the Senate Committee stressed its belief that some individual cases might still warrant an eventual reduction of a sentence, a possibility that § 3582(c) was intended to address:

> The Committee believes that there may be unusual cases in which an eventual reduction in the length of a term of imprisonment is justified by changed circumstances. These would include cases of severe illness, cases in which other extraordinary and compelling circumstances justify a reduction of an unusually long sentence, and some cases in which the sentencing guidelines for the offense of which the defender was convicted have been later amended to provide a shorter term of imprisonment.

*Id.* at 55–56 (emphasis added). Rather than having an "expensive and cumbersome" Parole Commission deal with such cases, Congress decided that § 3582(c) could and would enable courts to decide, in individual cases, if "there is a justification for reducing a term of imprisonment," albeit "subject to consideration of sentencing commission standards." *Id.* at 56.

Congress initially delegated to the U.S. Sentencing Commission ("Commission") responsibility for determining what constituted "extraordinary and compelling reasons." *See* 28 U.S.C. § 994(t) ("The Commission . . . shall describe what should be considered extraordinary and

compelling reasons for sentence reduction [under 18 U.S.C. § 3582(c)(1)(A)], including the criteria to be applied and a list of specific examples.").

The Commission ignored this directive until 2006, when it finally issued a policy statement that authorized a reduction in a sentence term upon a court's determination that "extraordinary and compelling reasons warrant the reduction," but, even then, the Commission made no attempt to define "extraordinary and compelling reasons." U.S.S.G. § 1B1.13(1)(A) (2006). Instead, in the Application Notes, it stated that "[a] determination made by the Director of the Bureau of Prisons that a particular case warrants a reduction for extraordinary and compelling reasons shall be considered as such for purposes of subdivision (1)(A)." U.S.S.G. § 1B1.13 comment. n.1(A) (2006). In 2007, it elaborated upon the definition of "extraordinary and compelling reasons," but still within the context of the Application Notes rather than in the Sentencing Guidelines themselves, and the definition at that time simply encompassed only those circumstances already identified by the BOP,[2] plus other, unidentified "extraordinary and compelling reason[s]." U.S.S.G. § 1B1.13 comment. Note 1 (2007).

By November 2018, the most recent edition of the Sentencing Guidelines, the definition had been substantially expanded, but it is still contained only within the Application Notes to § 1B.13, rather than the actual Policy Statement in the guideline:

---

[2] The BOP had attempted to fill the void left by the Sentencing Commission by promulgating its own policies governing when it would file a motion for compassionate release. The most recent version of the BOP's policy prior to the passage of the First Step Act was Program Statement 5050.49, Compassionate Release, Reduction in Sentences, dated March 25, 2015, available online at https://www.bop.gov/policy/progstat/5050_049_CN-1.pdf. The BOP's policies focus on an inmate's medical circumstances, age in conjunction with medical conditions related to aging and the proportion of the sentence served, and the death or incapacitation of the family member caregiver of an inmate's child. They do not attempt to define "extraordinary or compelling circumstances" outside those parameters other than to indicate that such circumstances "could not reasonably have been foreseen by the court at the time of sentencing." *See* 28 C.F.R. § 571.61(a).

1. <u>Extraordinary and Compelling Reasons</u>.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

(A) Medical Condition of the Defendant.—

(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) <u>Age of the Defendant</u>.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) <u>Family Circumstances</u>.

(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) <u>Other Reasons</u>.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 comment. n.1 (Nov. 1, 2018).

Notably, consistent with the text and legislative history of § 3582(c), the Commission included subdivision (D), a "catch-all" provision acknowledging the possibility of "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)," but the catch-all provision was still tied to BOP endorsement. *Id.* comment. n.1(D). Otherwise, however, the Commission's definition of "extraordinary and compelling reasons" diverges from that of the BOP by specifically noting that the reasons do not need to have been unforeseen at the time of sentencing, *id.* comment. n.2, and, in response to a DOJ report finding that the BOP rarely moved courts for a § 3582(c)(1)(A) reduction even for prisoners who met the objective criteria,[3] it contains commentary urging the BOP to file motions for compassionate release whenever a prisoner is found to meet the objective criteria in the guideline application note, *id.* comment. n.4 ("The Commission encourages the Director of the Bureau of Prisons to file such a motion if the defendant meets any of the circumstances set forth in Application Note 1.").

In December 2018, Congress passed the First Step Act, Section 603 of which transformed the process for compassionate release under § 3582(c)(1)(A). *See* P.L. 115-391, 132 Stat. 5194, at § 603 (Dec. 21, 2018). Specifically, instead of depending on the BOP director to determine the existence of an extraordinary or compelling reason and then to move for release, a court can now resentence "upon motion of the defendant," if the defendant has fully exhausted all administrative

_____

[3] *See* U.S. Dep't of Justice Office of the Inspector General, The Federal Bureau of Prisons' Compassionate Release Program (April 2013), available online at https://oig.justice.gov/reports/2013/e1306.pdf. *See also United States v. Dimasi*, 220 F. Supp. 3d 173, 175 (D. Mass. 2016) (noting that, prior to 2013, the BOP filed an average of thirteen compassionate-release motions annually and that, although the BOP broadened its policy in 2013 to make inmates who were not terminally ill eligible for consideration, the DOJ found in 2016 that "few aging inmates have been the beneficiaries of motions for compassionate release under the expanded policy").

remedies or, alternatively, more than thirty days has passed from the prison warden's receipt of a request for compassionate release. 18 U.S.C. § 3582(c)(1)(A). Under the amended statute, once a defendant files such a motion following exhaustion, the court "may reduce the term of imprisonment . . . , after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction" and "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i).

The effect of the amendments is that a district judge has the ability to grant a prisoner's motion for compassionate release even in the face of BOP opposition or its failure to respond to a prisoner's request for compassionate release in a timely manner. As the defendant points out, Congress's express purpose in implementing these changes was to expand the use of compassionate release sentence reductions under § 3582(c)(1)(A). *See, e.g.*, First Step Act, PL 115-391, 132 Stat 5194, 5239 (titling the subsection amending § 3582, "Increasing the Transparency and Use of Compassionate Release"); 164 Cong. Rec. S7314-02, 2018 WL 6350790 (Dec. 5, 2018) (statement by Senator Cardin, co-sponsor of the First Step Act, noting that its purpose was to "expand[s] compassionate release" and "expedite[] compassionate release applications").

Notwithstanding the statutory amendment, as set forth above, the "catch-all" provision in Application Note (1)(D) to U.S.S.G. § 1B1.13 still cross-references the BOP Director as the individual with authority to determine in a particular prisoner's case the existence of another "extraordinary and compelling reason, other than, or in combination with, the reasons described in subdivisions (A) through (C)." In addition, however, the Sentencing Commission's policy statement also presumes that a compassionate release sentence reduction may only be granted

"upon motion" by the BOP Director "pursuant to 18 U.S.C. § 3592(c)(1)(A)." U.S.S.G. § 1B1.13, comment. n.4. As both parties recognize, however, the dependence on the BOP to determine the existence of an extraordinary and compelling reason, like the requirement for a motion by the BOP Director, is a relic of the prior procedure that is inconsistent with the amendments implemented by the First Step Act. (*See* Gov't Resp. to Def.'s Motion, Doc. No. 94, at 4–5 (acknowledging that the "Sentencing Commission's policy statement . . . is not ultimately conclusive given the statutory change."). In short, federal judges are no longer constrained by the BOP Director's determination of what constitutes extraordinary and compelling reasons for a sentence reduction. *See Stinson v. United States*, 508 U.S. 36, 38 (1993) ("[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline."). Accordingly, the district courts themselves have the power to determine what constitute extraordinary and compelling reasons for compassionate release.

Although it does not appear that any federal circuit court of appeals has addressed this issue, a majority of the district courts that have considered the issue have likewise held, based on the First Step Act, that they have the authority to reduce a prisoner's sentence upon the court's independent finding of extraordinary or compelling reasons. *See, e.g.*, *Maumau*, 2020 WL 806121, at *2 ("Mr. Maumau argues that because the First Step Act now allows either the Director or the individual defendant to file a motion for compassionate release, the portion of the catch-all provision that limits relief to grounds identified by the Director is inconsistent with the law . . . . [A] majority of district courts to consider the question have embraced Mr. Maumau's position."); *United States v. Brown*, 411 F. Supp. 3d 446, 451 (S.D. Iowa 2019) ("[I]f the [First Step Act] is to increase the use of compassionate release, the most natural reading of the amended § 3582(c) and

§ 994(t) is that the district court assumes the same discretion as the BOP Director when it considers a compassionate release motion properly before it. . . . Thus, the Director's prior interpretation of 'extraordinary and compelling' reasons is informative, but not dispositive." (internal quotation marks and citations omitted); *United States v. Beck*, No. 1:13-CR-186-6, 2019 WL 2716505, at *5–6 (M.D.N.C. June 28, 2019) ("The Sentencing Commission has not amended or updated the old policy statement since the First Step Act was enacted, nor has it adopted a new policy statement applicable to motions filed by defendants. While the old policy statement provides helpful guidance, it does not constrain the Court's independent assessment of whether "extraordinary and compelling reasons" warrant a sentence reduction under § 3582(c)(1)(A)(i)." (internal citation omitted)); *United States v. Cantu*, No. 1:05-CR-458-1, 2019 WL 2498923, at *4 (S.D. Tex. June 17, 2019) ("Given the changes to the statute, the policy-statement provision that was previously applicable to 18 U.S.C. § 3582(c)(1)(A) no longer fits with the statute and thus does not comply with the congressional mandate that the policy statement must provide guidance on the appropriate use of sentence-modification provisions under § 3582."); *United States v. Fox*, No. 2:14-CR-03-DBH, 2019 WL 3046086, at *3 (D. Me. July 11, 2019) ("I agree with the courts that have said that the Commission's existing policy statement provides helpful guidance on the factors that support compassionate release, although it is not ultimately conclusive given the statutory change.").[4]

---

[4] A few other courts have concluded to the contrary, either simply presuming or actually holding that the current policy statement is binding even after passage of the First Step Act. *See, e.g.*, *United States v. Solis*, No. 16-015-CG-MU2019 WL 2518452, at *2–3 (S.D. Ala. June 28, 2019) (denying relief but without discussion of the effect of the First Step Act on the Policy Statement); *United States v. Gross*, No. 2:04-CR-32-RMP, 2019 WL 2437463, at * 3 (E.D. Wash. June 11, 2019) (same); *United States v. Gutierrez*, No. CR 05-0217 RB, 2019 WL 2422601, at *1–2 (D.N.M. June 10, 2019) (same); *United States v. Shields*, No. 12-cr-00410-BLF-1, 2019 WL 2359231, at *4 (N.D. Cal. June 4, 2019) ("Shields has not cited, and the Court has not discovered, any authority for the proposition that the Court may disregard guidance provided by the Sentencing Commission where it appears that such guidance has not kept pace with statutory amendments."); *United States v. Clark*, No. 3:13-cr-163-FDW-1, 2019 WL 1052020, at *2 (W.D.N.C. Mar. 5,

### III.    THE DEFENDANT'S MOTION

Finding that the court has discretion to resentence, the court will consider the defendant's arguments in favor of resentencing. He argues that three extraordinary circumstances, considered together, justify a sentence reduction under § 3582(c)(1): (1) Congress has expressly renounced the interpretation of § 924(c) that resulted in Young's lengthy sentence; (2) Young's medical condition, advanced age, and his having served more than twenty years of his sentence justify release, *see* U.S.S.G. § 1B1.13, comment. n.1(B); and (3) he has demonstrated full rehabilitation and does not pose a risk of recidivism or threat of harm to the public, such that no penological purpose is served by his continued incarceration.

#### A.    The First Step Act's "Clarification" of § 924(c)

At the time Young committed the crimes of conviction, a defendant convicted of two (or more) § 924(c) violations in a single prosecution faced a 20-year minimum sentence for any subsequent violation of the same statute. *See* 18 U.S.C. § 924(c) (1996) ("Whoever, during and in relation to any crime of violence . . . , uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence . . . , be sentenced to imprisonment for five years . . . . In the case of his second or subsequent conviction under this subsection, such person shall be sentenced to imprisonment for twenty years.").[5] The sentence for each was required to be consecutive to any other sentence. *See id.* ("[N]or shall the term of imprisonment imposed under this subsection run

---

2019) (denying *pro se* defendant's motion for compassionate release without discussion of the impact of the First Step Act on the Commission's policy statement). Notably, however, in most of these cases the moving defendants did not argue the existence of any extraordinary or compelling reasons for release aside from their age or medical condition.

[5] By the time the defendant was sentenced in 2000, Congress had increased the penalty for second or subsequent convictions to twenty-five years. PL 105-386, 112 Stat 3469 (Nov. 13, 1998).

concurrently with any other term of imprisonment including that imposed for the crime of violence . . . in which the firearm was used or carried.").

From its initial enactment in 1968, Section 924(c) authorized a longer sentence for a second conviction than a first. According to Justice Stevens' dissent in *Deal v. United States*, 508 U.S. 129 (1993), until 1987, no court read the statute to require imposition of the second-conviction penalty unless the defendant, at the time he incurred the second § 924(c) conviction, had already been convicted in a previous case for violating § 924(c). *See id.* at 140–41 (Stevens, J., dissenting). In 1987, the Eleventh Circuit decided to the contrary—that a first offender convicted of two § 924(c) violations in one case would be subject to the second-conviction penalty. *United States v. Rawlings*, 821 F.2d 1543 (11th Cir. 1987). In *Deal*, a majority of the Supreme Court agreed with that interpretation of the statute. And, even though Congress amended § 924(c) several times after the Supreme Court issued *Deal*, including in 1998 to increase the penalty for second or subsequent convictions from twenty to twenty-five years, it did not get around to modifying the "second or subsequent conviction" language until 2018, with the passage of the First Step Act.

Nonetheless, for many years, *Deal* was criticized because its interpretation of the "stacking" provision in § 924(c) resulted in effective life sentences for many first offenders like Young. *See, e.g.*, *United States v. Angelos*, 345 F. Supp. 2d 1227, 1242–46 (D. Utah 2004) (finding that the stacking of § 924(c) counts in that case led to "unjust punishment" and that the statute was irrational insofar as it failed to distinguish between first offenders and recidivist offenders and required mandatorily punishing a multiple § 924(c) offender more harshly in some cases than murderers and rapists). In a hearing before the Sentencing Commission in May 2010, Sally Quillian Yates, then U.S. Attorney for the Northern District of Georgia, gave testimony noting that the "criticisms and concerns about the stacking of 924(c)s" were "well known," "particularly in a

scenario where you have an individual who is charged with multiple 924(c) counts in the same indictment." U.S. Sentencing Comm'n, Public Hearing, May 27, 2010, at 59–60 (testimony of Sally Quillian Yates), *available at* https://www.ussc.gov/sites/default/files/pdf/amendment-process/public-hearings-and-meetings/20100527/Hearing_Transcript.pdf.[6] As an example of this phenomenon, the Deputy Attorney General highlighted a case factually very similar to Young's:

> And so consequently, while the purpose of 924(c) may have originally been as a recidivist statute, where you have an individual who goes out on a spree and robs three banks and is now looking at life as a result of that, that that [sic] might not necessarily be the most appropriate use of the sentencing structure.

*Id.* at 60. Yates later, in her capacity as Deputy Attorney General and speaking on behalf of the Department of Justice, gave written testimony in favor of a bi-partisan bill that would have made § 924(c) a true recidivist statute by requiring an intervening conviction to trigger the harsh second-conviction penalty. *See* Statement of Sally Quillian Yates, Deputy Attorney General, Before the S. Jud. Comm. Hearing on S. 2123, at 2 (Oct. 19, 2015) (generally supporting bill that would "recalibrate[] some of our sentencing laws," but without reference to the § 924(c) provision), *available at* https://www.judiciary.senate.gov/imo/media/doc/10-19-15%20Yates%20Testimony. pdf; *see also* https://www.congress.gov/bill/114th-congress/senate-bill/2123/text (text of proposed S.2123).

Finally, in 2018, Congress issued a "clarification of section 924(c)." *See* P.L. 115-391, 132 Stat. 5194, at § 403 (Dec. 21, 2018). That "clarification" reversed *Deal*, rewording § 924(c) such that an intervening conviction is now necessary to trigger the harsh second-conviction penalties. Specifically, the First Step Act struck "second or subsequent conviction under this subsection" and

---

[6] This document may be reached first through the Sentencing Commission's site, at: https://www.ussc.gov/policymaking/meetings-hearings/notice-may-27-2010. Elsewhere on the Commission's site, a transcript for a hearing on August 19, 2003 is inexplicably substituted for the May 27, 2010 transcript.

replaced it with the unambiguous: "violation of this subsection that occurs after a prior conviction under this subsection has become final." P.S. 115-391, 132 Stat. 5194, at § 403. As the defendant argues, the fact that Congress characterized its action as a "clarification" suggests that it never intended the result in *Deal*.

Thus, as a result of the First Step Act, if Young were sentenced now, he would be subject to a mandatory minimum sentence of 25 years, rather than 92. *See Dean v. United States*, 137 S. Ct. 1170, 1177 (2017) (holding that nothing in the language of 18 U.S.C. § 924(c)(1)(D)(ii) "prevents a district court from imposing a 30-year mandatory minimum sentence under § 924(c) and a one-day sentence for the predicate violent or drug trafficking crime, provided those terms run one after the other").[7] The court finds that the drastic change effected by the First Step Act's amendment of § 924(c) constitutes an extraordinary and compelling reason for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A), at least when considered in conjunction with the other reasons discussed below. *Accord Maumau*, 2020 WL 806121, at *7 ("[T]his court concludes that the changes in how § 924(c) sentences are calculated is a compelling and extraordinary reason to provide relief . . . ."); *United States v. Urkevich*, No. 8:03CR37, 2019 WL 6037391, at *4 (D. Neb. Nov. 14, 2019) ("A reduction in his sentence is warranted by extraordinary and compelling reasons, specifically the injustice of facing a term of incarceration forty years longer than Congress now deems warranted for the crimes committed.").

---

[7] At the time Young was sentenced in 2000, the Supreme Court had not yet issued *United States v. Booker*, 543 U.S. 220 (2005), which, among other things, invalidated 18 U.S.C. § 3553(b)(1) (2000 ed., Supp. IV), "which made the Sentencing Guidelines mandatory" and made it clear that the Guidelines, instead, are advisory. *See Gall v. United States*, 552 U.S. 38, 46 (2007).

**B.     The Defendant's Age**

As set forth above, one of the expressly identified "extraordinary and compelling reasons" identified by the Sentencing Commission is the age of the defendant, specifically, that "[t]he defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13 comment. n. 1(B).

The defendant undoubtedly meets two of these criteria: he is 72 years old and he has served more than nineteen years of his sentence. In addition, his physical health, although perhaps not seriously deteriorating, is nonetheless declining due to chronic illnesses and the aging process. Most notably, he suffers from diabetes that requires multiple daily injections. He has high cholesterol, high blood pressure, and cataracts. In recent years he has been diagnosed with chronic kidney disease and has suffered recurrent bouts of abdominal pain leading to significant weight loss, among other illnesses. (*See* Doc. No. 88-4.) The plaintiff's health will no doubt continue to decline with age.

The court finds that this factor, standing alone, would not qualify as an extraordinary and compelling reason for compassionate release. The court, however, considers it in conjunction with the First Step Act's amendment to § 924(c) to find that extraordinary and compelling circumstances exist that warrant a sentence reduction under § 3582(c)(1)(A).

**C.     Rehabilitation**

As set forth in Application Note 3 to U.S.S.G. § 1B1.13, "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason" for post-judgment reduction in sentence. *See also* 29 U.S.C. § 994(t). The fact that it cannot, alone, justify a reduction in sentence does not mean that it is not relevant to whether a reduction is warranted. Regardless, having already determined that a reduction in sentence is warranted, the court has no need to consider the

defendant's argument that rehabilitation further justifies a reduction.[8] Moreover, in this case at least, the question of rehabilitation is more appropriately considered in the context of a hearing under § 3553 to determine what sentence is appropriate, as addressed below.

**D.     Section 3553**

Having found that Young's sentence should be reduced, the court must next "consider[ ] the factors set forth in section 3553(a) to the extent they are applicable" to determine what sentence would be appropriate. These factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;

---

[8] The defendant has submitted, in support of his motion, a Summary Reentry Plan – Progress Report by the BOP dated August 27, 2019, showing that Young "has maintained approximately 15 years of clear conduct and is not considered a disciplinary problem," has completed several educational and recreational programs, has worked continuously while incarcerated, "has volunteered to help with other tasks in the institution," "has received and continues to receive 'Outstanding' work reports," and maintains a clean and tidy living space. (Doc. No. 88-1, at 2–3.) The "General Comments" section of the Report further states that Young "expresses his desire to make positive lifestyle changes . . . . He is a hard worker and is eager to learn new jobs and help with sanitation in the institution. He has a good rapport with staff and fellow inmates." (*Id.* at 4.) In other words, the Progress Report indicates that Young has basically been a model prisoner. However, while his conduct while incarcerated certainly weighs in his favor, it does not, *per se*, establish the defendant's rehabilitation.

(4) the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . ;

(5) any pertinent policy statement . . . issued by the Sentencing Commission . . . ;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Although Young characterizes his motion as a request for "compassionate release," as other courts have recognized, the court in granting the motion has no obligation to modify the sentence to effectuate his immediate release from prison. Rather, a downward adjustment may be made even if it results in continued incarceration. *Accord Maumau*, 2020 WL 806121, at *8; *see also Urkevich*, 2019 WL 6037391 at *4 ("If this Court reduces Urkevich's sentences on Counts III and V to 60 months each, consecutive, he will not be eligible for immediate release. . . . Nonetheless, the Court does not consider the Motion premature . . . . A reduction in the sentence at this juncture will help Urkevich and the Bureau of Prisons plan for his ultimate release[.]"). The court finds that a hearing for the purpose of considering the relevant § 3553(a) factors provides the most appropriate means for the court to determine the appropriate sentence in this case.

## IV.     CONCLUSION

For the reasons forth herein, the defendant's Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A)(i) will be granted, and the court will schedule a hearing at which the parties may both present argument regarding what they believe would be an appropriate sentence. An appropriate Order is filed herewith.

ALETA A. TRAUGER
United States District Judge